UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

DAMIAN BROWN,

Defendant.

---

05-cr-538 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

Damian Brown has served over 17 years in prison for his role in a drug conspiracy and murder, just over half of his original 32.5 year sentence. Brown now moves for a sentence reduction to time served. He points his relative youth and borderline intellectual ability at the time he committed the offense, an impressive post-conviction record of rehabilitation, and the unexpectedly harsh conditions of incarceration he has experienced during the COVID-19 pandemic, arguing that these factors together demonstrate "extraordinary and compelling reasons" that together warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). The Government opposes any reduction, arguing that Brown's youth, intellectual limitations, and certain evidence of good character were already reflected in the Court's original sentence.

The Court agrees with Brown that extraordinary and compelling reasons warrant a modest sentence reduction. But a reduction of sentence to time served, as Brown requests, would be inconsistent with the § 3553(a) sentencing factors and the seriousness of Brown's

1

offense. On balance, the Court concludes that a reduction of 4.5 years, or 54 months, is warranted for the reasons set forth below.

I. **Factual Background**

The Court assumes general familiarity with the facts of this case. See generally Damian Brown Pre-Sentencing Report ("PSR") (Aug. 11, 2008).[1] As relevant here, in the early 2000s, Brown distributed between 50 and 100 kg marijuana on behalf of an organization run by his co-defendant, Shawn Peterkin. PSR ¶¶ 15, 26. After Peterkin was robbed at gunpoint, Brown assisted in Peterkin's attempts at retaliation, including by shooting at the robbers on multiple occasions and participating in a car chase in which he and several co-defendants fired into a car and killed one of the robbers. Id. ¶¶ 17-19. At Brown's trial, a cooperating witness testified that, as the witness and Brown were waiting to be brought into court, Brown made comments that the witness perceived to be threatening. Id. ¶ 30. Brown was then convicted and sentenced to 390 months in prison, or 32.5 years. See Judgment as to Damian Brown, Dkt. 111 (Oct. 2, 2008).

Brown grew up in a violent area of Kingston, Jamaica, where he had a "tough" childhood. PSR ¶ 65. He was raised largely without a father, and his mother was not always able to provide sufficient

---

[1] All capitalized terms here used refer to the definitions set forth in the Opinion, unless otherwise specified. Also, all internal quotation marks, alterations, omissions, emphases, and citations have been omitted from all cited sources.

food. Id. ¶ 65-66. In high school, Brown had a baby with a fellow student, Anika Thomas. Id. ¶ 68. As explained in section III.A.1, Brown suffered from significant cognitive impairments at the time of his offense.

As also discussed in greater detail below, Brown has made great strides toward rehabilitation in prison. He has not received a single disciplinary infraction since his sentencing and has successfully completed a wide range of educational and psychological programming and received a glowing review from a Bureau of Prisons staff psychologist. Though behind bars, he has managed to maintain close relationships with both Ms. Thomas and their shared son Damian, as well as with other family members.

This Court recently partially granted a motion for a sentence reduction from one of Brown's co-defendants, Franz Golding. See United States v. Golding, No. 05-cr-538, 2022 WL 2985014, at *1 (S.D.N.Y. July 27, 2022). Golding, like Brown, played a part in Peterkin's drug distribution scheme, and, like Brown, participated in several of Peterkin's attempts at retaliation, including the ultimate car chase and shooting. Id. (Unlike Brown, Golding used an AK-47 automatic rifle. Golding v. United States, 2014 WL 295926, at *1 (S.D.N.Y. Jul 2, 2014)). This Court originally sentenced Golding to 35 years in prison, but recently ordered that sentence reduced by 10%, or 42 months, because of Golding's young age (20) at the time of the offense, reasonably strong evidence of his rehabilitation,

and the harsh conditions of confinement Golding experienced during the COVID-19 pandemic. Golding, 2022 WL 2985014, at *5.[2]

## II. Legal Standard

The First Step Act empowers district courts to modify a defendant's term of imprisonment after the defendant exhausts administrative remedies when there are "extraordinary and compelling reasons warrant[ing] such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The statute also requires courts to consider whether "the 18 U.S.C. § 3553(a) sentencing factors [are] consistent with a lesser sentence than that previously imposed," and, if so, whether there is "a particular sentence reduction consistent with the § 3553(a) factors that is also warranted by extraordinary and compelling reasons." United States v. Garcia, 505 F. Supp. 3d 328, 331 (S.D.N.Y. 2020).

District courts may exercise "broad" discretion in determining which circumstances qualify as "extraordinary and compelling," as well as in determining what degree of sentence reduction (if any) is appropriate. United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). Though a defendant's "rehabilitation . . . alone shall not be

---

[2] This Court denied a compassionate release motion from Golding and Brown's co-defendant Shawn Peterkin last year. United States vs. Peterkin, No. 05-cr-538, 2021 WL 1948513 (S.D.N.Y. May 13, 2021). As the criminal conspiracy's ringleader, Peterkin bore the greatest responsibility for it; he was also significantly older than Brown and Golding at the time of the offense. Id. at *1. Peterkin's motion was based largely on non-extraordinary health factors that placed him at somewhat increased risk from COVID-19, and his evidence of rehabilitation was contradicted by recent disciplinary reports, including for assault. Id. at *2. The Court's decision in that case is therefore of little relevance here.

4

considered an extraordinary and compelling reason" warranting a sentence reduction, 28 U.S.C. § 994(t) (emphasis added), rehabilitation may, with other factors, contribute to a finding that such circumstances exist. Brooker, 976 F.3d at 238. This Court has previously found such reasons based in whole or in part on "an offender's youth, combined with society's evolving understanding of the adolescent brain," United States v. Ramsay, 538 F. Supp. 3d 407, 410 (S.D.N.Y. 2021), a defendant's "extraordinary rehabilitation," United States v. Quinones, No. 00-cr-761, 2021 WL 797835, at *3 (S.D.N.Y. Feb. 27, 2021), and the "far harsher than normal" conditions of confinement during the COVID-19 pandemic, United States v. Rodriguez, 492 F. Supp. 3d. 306, 311 (S.D.N.Y. 2020).[3]

### III. Analysis

All parties agree that Brown has exhausted administrative remedies. The outcome of his motion therefore turns on whether there are extraordinary and compelling reasons to merit a reduced sentence in accordance with the factors set forth in section 3553(a).

#### A. Extraordinary and Compelling Reasons

The Court finds that Brown has adequately demonstrated extraordinary and compelling reasons that justify some level of sentence reduction, based collectively on three factors.

---

[3] Such conditions are "insufficient on [their] own" to constitute extraordinary and compelling circumstances, but may contribute to such circumstances in conjunction with other factors. Id.

5

*1. Brown's age and mental ability at the time of the offense*

Brown was 25 years old at the time of the offense. Def. Mem. Supp. Mot. ("Def. Mem.") at 7, Dkt. 225 (May 6, 2022). He argues that his participation in the crime was significantly influenced by his immaturity, susceptibility to pressure from Peterkin and others, and the continuing influence of having grown up very poor, in a violent area, and with only one parent. Def. Mem. 7-12; Ramsay, 538 F. Supp. 3d at 417 (explaining how immaturity, susceptibility to peer pressure and other influences, dependence on family and surrounding environment, and salvageability each impact a young offender's culpability and the appropriate sentence).

Brown, at 25, was older at the time of his offense than the 18-year-old defendant in Ramsay, Brown's co-defendant Golding (20), or the minor defendants in Roper v. Simmons, 531 U.S. 561 (2005) and Miller v. Alabama, 567 U.S. 460 (2012), cases on which Ramsay relies. Common sense and the science of juvenile brain development both indicate that there are generally significant differences in maturity between a 25-year-old and someone in their teens or early 20s.[4]

---

[4] As discussed in Ramsay, "neuroscience and psychology" have demonstrated that brain develop and maturation may continue "'until the early 20s or later.'" 538 F. Supp. 3d at 418 (quoting Sara B. Johnson et al., Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy, 45 J. Adolescent Health 216 (2009) (NIH Public Access Version), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2892678/pdf/nihms207310.pdf, at 1). "[F]acets of hot cognition . . . impulse control, future orientation, and resistance to peer influence follow a protracted development into adulthood," although they "decrease[] into the early- to mid-20s." Grace Icenogle et al., Adolescents'

6

This Court need not decide whether age, without more, might constitute extraordinary and compelling circumstances warranting a sentence reduction for a typical 25-year old defendant, because the relevant features of youth in Brown's case were exacerbated by a borderline intellectual disability. A report prepared at the request of the Government prior to Brown's sentencing found that Brown's IQ was 70--the lowest "borderline" score possible before a person is considered to have a mental disability. Forensic Psychological Evaluation by Dr. Cheryl Paradis ("Paradis Evaluation") at 6, Dkt. 106-5 (Dec. 15, 2007). The report described Brown as having "reduced mental capacity due to intellectual deficits and limited education." Id. Another evaluation prepared prior to Brown's sentencing at the request of his counsel likewise determined that Brown's IQ was at the lowest end of the borderline range, and that Brown exhibited "limited intellectual and associated cognitive functioning[,] . . . impulsive behavior, poor judgment, limited comprehension, and extremely poor verbal expression." Neurospychological Evaluation by Dr. Wilfred Van Gorp ("Van Gorp Evaluation") at 7, Dkt. 106-4 (Mar. 30, 2006); id. (describing Brown as "an intellectually naïve individual," with "brain dysfunction which has been present lifelong."))

---

Cognitive Capacity Reaches Adult Levels Prior to Their Psychosocial Maturity: Evidence for a 'Maturity Gap' in a Multinational, Cross-Sectional Sample, 43 Law & Hum. Behav. 69 (2019) (NIH Public Access Version), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6551607/pdf/nihms-1025357.pdf.

7

Importantly, the ways in which Brown's intellectual difficulties appear to have manifested themselves--in "impulsive behavior, poor judgment, limited comprehension" and susceptibility to "influence[] by others"--recall precisely those features of youth that make young offenders less deserving of harsh punishment. Compare id., with Ramsay, 538 F. Supp. 3d at 417 (discussing youthful offenders' immaturity, susceptibility to peer influence, salvageability, and dependence on family and surrounding circumstances). The Court notes in this regard that the difficult circumstances of Brown's childhood--which involved growing up in deep poverty in a violent area of Kingston, Jamaica with only one parent and sometimes without sufficient food, PSR ¶¶ 64-65-- may have slowed Brown's maturation and rendered him at 25 more akin to a younger offender in ways that matter for sentencing.[5]

Notably, the line of Eighth Amendment cases this Court relied on in Ramsay relating to youth in sentencing themselves drew on Atkins v. Virginia, 536 U.S. 304 (2002), which held that the Eighth Amendment precludes executing the mentally disabled. See Roper, 543 U.S. at 571-72 (discussing Atkins). As made clear in Roper, the standard

---

[5] The Court notes that, in prison, Brown has amassed an impressive record of educational certificates. Infra at III.A.2. The psychological evaluation prepared prior to Brown's sentencing at the request of the Government indicated that some, though not all, of Brown's mental impairment as measured on standardized tests may have been attributable to poor education and the changed cultural context between the U.S. and Jamaica. Paradis Evaluation at 4. Whether or not the cognitive impairment Brown exhibited as a young man was immutable, or influenced at least in part by circumstance, it clearly impacted Brown's ability as a young man to control impulses and resist peer influences.

"penological justifications" of deterrence and retribution apply with significantly diminished force to youthful offenders for the same reasons they apply with reduced force to the mentally impaired; young and mentally impaired individuals are both less culpable when they fail to conform their conduct to societal expectations, and are less susceptible to being deterred by the prospect of harsh punishment. Id.

The Government argues that Brown's age and cognitive impairment were considered at sentencing and are already reflected in a below-guidelines sentence that is also slightly below that of Brown's co-defendants. Gov't Mem. Opp. Mot. ("Opp."), Dkt. 228 (May 27, 2022). But "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction." U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2021).[6]

Moreover, one important reason why youth matters in sentencing is that the character of younger defendants is generally still evolving. Ramsay, 538 F. Supp. 3d at 422, While that is true as a general matter, at the time Brown was sentenced this Court could only

---

[6] The Second Circuit held in Brooker that this particular section of the Guidelines failed to take into account the changes brought about by the First Step Act and was therefore not "applicable" to defendants seeking a sentence reduction directly rather than upon the motion of the Bureau of Prisons. 976 F.3d at 235. However, it does not therefore follow that the expectation existing before the First Step Act--that extraordinary and compelling circumstances might warrant a sentence reduction even when they were foreseeable or foreseen at the time of sentencing--no longer applies.

guess at Brown's future behavior. Today, this Court may assess Brown's conduct over his seventeen years in prison. As explained below, Brown's post-conviction record reinforces the conclusion that his age and cognitive condition at the time of conviction weigh in favor of a sentence reduction.

2. *Brown's rehabilitation*

Though "rehabilitation . . . <u>alone</u> shall not be considered an extraordinary and compelling reason" warranting a sentence reduction, 28 U.S.C. § 994(t) (emphasis added), rehabilitation may, with other factors, contribute to a finding that such reasons exist. <u>Brooker</u>, 976 F.3d at 311; <u>see Rodriguez</u>, 492 F. Supp. 3d at 311 (finding that a defendant's rehabilitation "can interact with the present coronavirus pandemic to create an extraordinary and compelling reason for a sentence reduction").

Brown offers strong evidence of rehabilitation. In the many years since he was sentenced, Brown has not had a single disciplinary infraction--a powerful signal that Brown has learned, with greater maturity, to conform his conduct to societal expectations even within a stressful prison environment. Def. Mem. 12. He has successfully completed a wide range of educational and psychological programs, the certificates from which span over 40 pages. Pro Se Motion for Reduction in Sentence ("Pro Se Mot."), Dkt. 225-1 at 40-85. These achievements are particularly commendable considering the length of Brown's originally imposed sentence and the years of additional time Brown faces prior to release, facts which might lead many people to give up

on self-improvement. Brown has done the opposite, greatly impressing a Bureau of Prisons staff psychologist, who described Brown's active participation in a Long Term Incarceration Group as follows:

> Mr. Brown has been a very active member of this group. His exemplary participation is not common for the majority of inmates enrolled in institutional programs. Mr. Brown demonstrates insight and self reflection. He provides thoughtful and constructive feedback to his peers. He demonstrates a genuine dedication to evaluate his past choices, current behaviors, and plans for the future, similarly, he shows a sincere dedication to helping his peers do the same.

Id. at 91.

The Court also notes that it has received letters from many of Brown's family members, who all speak to the continued positive role he plays in their lives even after 17 years of incarceration. Of particular note is a letter from Brown's son, also named Damian Brown, who was only 7 at the time of Brown's incarceration. Now an adult, the younger Mr. Brown writes that his father "raised me to be the hard working and humble man I am today through the prison telephones." Letter from Damian Brown, Dkt. 225-10 (May 6, 2022). He explains that while he is aware of his father's very serious criminal conduct, his father has been a continuous positive influence in his life as he has grown up, notwithstanding their physical separation. Id.

The Government notes that, at the time Brown was sentenced, many friends, family, and associates also submitted letters speaking to the positive role Brown played in their lives. Opp. 4. It argues that the Court has gave due weight to such evidence of Brown's character when

11

it sentenced Brown to a shorter term of imprisonment than any of Brown's co-defendants. Opp. 4.

This overlooks the fact that, at this Court sentenced him, Brown had just committed an egregious crime. 17 years later, there is no evidence of continuing misconduct, and there is significant evidence of rehabilitation. Though Brown's rehabilitation <u>alone</u> cannot give rise to extraordinary and compelling reasons warranting a sentence reduction, it strongly contributes to the Court's finding that such circumstances exist.

*3. Harsh Conditions of Confinement During the Pandemic*

Finally, Brown argues that the harsh conditions of his imprisonment during the COVID-19 pandemic, which included extended periods when he was not able to receive any visits from family and periods in which Brown's movement within prison was severely restricted, have rendered his confinement "harsher and more punitive than the Court had anticipated at sentencing." <u>Rodriguez</u>, 492 F. Supp. 3d at 311; <u>see also</u> <u>United States v. Robles</u>, 553 F. Supp. 3d 172, 184 (S.D.N.Y. 2021) (granting a reduced sentence because harsh conditions of imprisonment during the COVID-19 pandemic were "far more punishing than intended"). While this fact might not on its own support a finding of extraordinary and compelling circumstances, it combines with Brown's youth and cognitive impairments at the time of the offense and his evidence of rehabilitation to further support the Court's finding.

12

B. **The Section 3553(a) Sentencing Factors**

After finding that extraordinary and compelling reasons exist, the Court must also consider whether a reduction would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).[7]

By any standard, Brown's offense was egregious. Brown was one participant in a chase and drive-by shooting that resulted in the victim's death and also recklessly exposed innocent bystanders to serious harm. Given these facts, a reduction of sentence to time served (as requested by the Brown) would be inconsistent with the § 3553(a) sentencing factors. In fact, as noted by the Government, this Court stated at Brown's sentencing that any sentence under 30 years would not adequately reflect the seriousness of Brown's offense. Opp. at 5 (quoting Sentencing. Tr. at 13-14).

Time and experience--including a deeper understanding of the role youth and impaired cognition play in criminal conduct, Brown's excellent record of rehabilitation, and the unexpectedly harsh conditions of Brown's confinement in recent years--have proven that statement premature. Though the seriousness of Brown's crime continues to demand very severe sanction--including a significantly longer period of incarceration than Brown has already served—the Court no

---

[7] These factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

longer believes that such a period must exceed 30 years. Instead, the Court believes that an overall sentence of 28 years--4.5 years, or 54 months, shorter than the one it originally imposed--is "sufficient, but not greater than necessary" to comport with the 3553(a) factors.

## IV. Conclusion

The Court finds extraordinary and compelling reasons that warrant a sentence reduction based on Brown's age and cognitive impairment at the time of the offense, strong evidence of post-conviction rehabilitation, and the unexpectedly harsh conditions of imprisonment during the COVID-19 pandemic. The Court also finds that a reduction of sentence of 54 months, or 4.5 years, would be consistent with the Section 3553(a) sentencing factors. As such, Brown's motion is granted in part, and his sentence is ordered reduced by 54 months, that is, to a sentence of 336 months.

SO ORDERED.

New York, NY
August 15, 2022

_____
JED S. RAKOFF, U.S.D.J.